IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TODD QUAVION CARTER,

        Plaintiff,

v.

ROBERT VICKERY, KIM CAMPBELL,
and BRYAN GERRY,

        Defendants.[1]

OPINION & ORDER

15-cv-539-jdp

---

Pro se plaintiff and prisoner Todd Carter is proceeding on claims that prison staff violated his Eighth Amendment rights by refusing to help him, either when he informed them he was suicidal or when he intentionally overdosed on medication. Defendants have filed a motion for summary judgment, Dkt. 21, which is ready for review. I will grant the motion because the undisputed evidence shows that none of the defendants disregarded Carter's health or safety.

Also before the court is defendants' motion to extend the deadline for conducting discovery and submitting pretrial materials. Dkt. 32. In light of the decision on summary judgment, I will deny that motion as moot.

UNDISPUTED FACTS

Carter did not dispute any of defendants' proposed findings of fact, so I have treated defendants' properly supported proposed findings of fact as undisputed.

---

[1] I have amended the caption to reflect defendants' full names, as identified in their summary judgment materials.

At the time relevant to this case, Todd Carter was a prisoner housed in segregation at the Columbia Correctional Institution, which is in Portage, Wisconsin. On October 17, 2014, Bryan Gerry, a correctional officer at the prison, went to Carter's cell after another officer told Gerry that Carter was refusing to close the trap in his cell door. When Gerry arrived, Carter displayed his right hand to Gerry (presumably through a window in the cell door), then moved the hand to his mouth and "motioned liked he swallowed." Dkt. 28, ¶ 11. Carter yelled out that he took 40 pills and that Gerry saw him do it.

Gerry had not seen any pills in Carter's hand and he did not believe that Carter had swallowed any pills. Carter did not tell Gerry at any time that he was feeling suicidal or that he needed to see mental health staff.

Staff directed Carter to come to the cell door. When Carter refused, a lieutenant assembled a team to remove Carter from the cell. Eventually, Carter agreed to comply with orders and he walked to the dayroom with officers.

Because Carter alleged that he swallowed pills, defendant Kim Campbell, a nurse at the prison, examined him. Gerry searched Carter's cell, found one pill, and brought it to Campbell, who identified it as Thorazine, one of Carter's prescribed medications. Campbell noted that Carter was alert and oriented. She did not observe anything abnormal.

Campbell discussed the situation with defendant Robert Vickrey, a psychiatrist at the prison. At that point, Carter's vital signs were "mildly elevated." *Id.* at ¶ 26. (Medical records show that Carter's heart rate was 100 beats per minute.) Vickrey ordered an electrocardiogram (EKG) to measure Carter's "QT (QTc) prolongation," which is an increase in the time between the two phases of the heart's electrical cycle. Overdosing on Thorazine could cause QT(QTc) prolongation, which could lead to sudden cardiac failure. The EKG showed that Carter's

QT(QTc) prolongation was in the normal range. Vickrey also observed that Carter was awake and able to walk on his own, which is inconsistent with a Thorazine overdose.

In light of the EKG result and these observations, Vickrey concluded that Carter could be returned to his cell. Vickrey directed staff to take Carter's vital signs again in two hours. And Vickrey was aware of security policy that required staff to monitor Carter every 15 minutes.

Two hours later, staff took Carter's vital signs, which showed "low blood pressure and increased heart rate." *Id.* at ¶ 35. (Medical records show that his blood pressure was 126/80 lying down, 118/79 sitting, and 86/50 standing. His pulse was 86 lying down, 124 sitting, 156 standing and 108 after a second check while standing.) Vickrey directed staff to send Carter to the hospital.

At the hospital, Carter denied any fever, chills, vomiting, diarrhea, chest pain, or nausea, but he complained of "mild GI upset," and staff observed that he was "extremely lethargic." Dkt. 25-1, at 7. Hospital test results indicated that Carter had ingested cocaine and TCA, which is an antidepressant. (The results did not indicate how much of these substances Carter had ingested.)

Carter remained at the hospital for 24 hours for observation before he was discharged.

ANALYSIS

In the order screening Carter's complaint, I allowed plaintiff to proceed on two sets of claims: (1) Bryan Gerry refused to help when Carter told him that he was having suicidal thoughts; and (2) all of the defendants failed to respond reasonably after Carter swallowed a large number of pills. Both claims arise under the Eighth Amendment.

3

Prison staff violate the Eighth Amendment if they are "deliberately indifferent" to "a substantial risk of serious harm" to a prisoner's health or safety, *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), which may include acts of self-harm, *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 665 (7th Cir. 2012) ("[P]rison officials have an obligation to intervene when they know a prisoner suffers from self-destructive tendencies."). A defendant is "deliberately indifferent" if he is aware of the risk of harm and consciously fails to take reasonable measures to help the prisoner. *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006); *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000). On a motion for summary judgment, it is the plaintiff's burden to adduce evidence from which a reasonable jury could find in his favor on each element of his claims. *Henderson v. Sheahan*, 196 F.3d 839, 848 (7th Cir. 1999).

In this case, it is questionable whether Carter was subjected to a substantial risk of serious harm. The evidence shows that Carter experienced an elevated heart rate, low blood pressure, lethargy, and a mild upset stomach, none of which suggest that Carter was in danger or needed medical treatment.

But even if I assume that Carter's symptoms were sufficiently serious to implicate the Eighth Amendment, the undisputed facts show that none of the defendants were deliberately indifferent to Carter's health or safety. Carter's first claim—that Gerry disregarded Carter's threats of self-harm—fails for the simple reason that it is undisputed that Carter never told Gerry that he was feeling suicidal. Gerry cannot be held liable for failing to prevent Carter from harming himself if Gerry had no warning of a potential threat.

Carter's second claim against all the defendants fails as well because the undisputed evidence shows that each of them responded reasonably to the situation. When Carter told

4

Gerry that he had swallowed pills, prison staff immediately took steps to remove Carter from his cell and arrange a medical examination by a prison nurse. As someone without medical training, that was all Gerry was required to do. *Mathison v. Moats*, 812 F.3d 594, 597–98 (7th Cir. 2016) (guard not deliberately indifferent when he "immediately notified his superior" of prisoner's medical need; "he had no medical training that would have enabled him to do more for" the prisoner); *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) ("The officers were not responsible for administering medical care to [the prisoner]; rather, they were entitled to defer to the judgment of jail health professionals so long as [they] did not ignore [the prisoner].") (internal quotations omitted).

When Kim Campbell, the nurse, examined Carter, he was alert and oriented and she observed nothing abnormal about him, which was inconsistent with Carter's allegation that he swallowed a large number of pills. Still, Campbell contacted the prison psychiatrist for further instructions. This shows that Campbell was taking reasonable steps to provide appropriate treatment.

Robert Vickrey, the psychiatrist, ordered an EKG despite the absence of symptoms. When the results of the EKG did not show a problem, Vickrey ordered Carter to be monitored and to take his vital signs again in two hours. And when Carter's vital signs appeared to be abnormal, Vickrey directed staff to be taken to the hospital.

In sum, each defendant took reasonable steps to monitor and evaluate Carter's condition and sought additional care when it was appropriate. Under these circumstances, no reasonable jury could find that any of the defendants violated the Eighth Amendment.

Carter does not dispute any of defendants' evidence regarding the way they responded his situation. Instead, he raises three other issues in his brief. First, he challenges the hospital

records showing that he tested positive for cocaine but not Thorazine. Second, he criticizes defendants for waiting several hours before taking him to the hospital. Third, he says that a declaration he submitted from another prisoner will show that defendants were deliberately indifferent. The evidence and arguments cited in Carter's brief do not raise a genuine issue of material fact.

First, Carter has not submitted any evidence challenging the accuracy of the hospital records. But even if he had, it is irrelevant to defendants' motion whether he ingested cocaine, Thorazine, or some other drug. Because defendants did not know which drugs Carter had ingested (or whether he had ingested any drugs at all), the question is whether defendants responded reasonably in light of what they knew and observed. I have concluded that they did.

Second, Carter did not have an absolute right under the Eighth Amendment to be taken to the hospital immediately simply because he believed that was the appropriate response. This was not a situation in which Carter was suffering from an obvious medical emergency, so medical staff were entitled to rely on their own observations and expertise to determine whether Carter's symptoms and conduct were consistent with a need for immediate treatment at the hospital. *Jackson v. Kotter*, 541 F.3d 688, 697–98 (7th Cir. 2008) ("A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.") (internal quotations omitted).

Once Carter's symptoms appeared more serious, defendants responded immediately by taking him to the hospital. Carter does not allege that the delay harmed him in any way. *Knight v. Wiseman*, 590 F.3d 458, 466–67 (7th Cir. 2009) (delay in providing treatment did not violate Eighth Amendment when "[a]ny delay in treatment . . . was minimal and had no adverse

consequences [and] there [was] no evidence that the delay . . . was caused by willful ignorance or malice").

Third, the other prisoner states in his declaration that "supervisory personnel" are aware of the "endemic problem of mentally ill inmates overdosing" and that "many times" he witnessed staff "allow an inmate to O.D. and wait hours for E.R. treatment." Dkt. 30. But even if these allegations are true, they do not provide a basis for denying defendants' summary judgment motion. Regardless whether prison staff act appropriately as a general matter, Carter must show that the defendants in this case were deliberately indifferent to *his* health or safety. Because the prisoner says nothing about the reasonableness of defendants' conduct in this case, the declaration does not support Carter's claim.

ORDER

IT IS ORDERED that:

1. The motion for summary judgment filed by defendants Robert Vickery, Kim Campbell, and Bryan Gerry, Dkt. 21, is GRANTED.
2. Defendants' motion to extend the time to conduct discovery and file pretrial materials, Dkt. 32, is DENIED as moot.
3. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered September 22, 2017.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge

7